IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


SHELLY J. G.,[1]

        Plaintiff,

v.

COMMISSIONER, Social Security Administration,

        Defendant.

No. 3:18-cv-00926-HZ

OPINION & ORDER

HERNÁNDEZ, District Judge

    Plaintiff brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)).

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for non-governmental party's immediate family members.

1 - OPINION & ORDER

Because the Commissioner's decision is free of legal error and supported by substantial evidence in the record, the Court AFFIRMS the decision and DISMISSES this case.

## BACKGROUND

Plaintiff was born July 13, 1960 and was fifty-three years old on the alleged disability onset date. Tr. 23.[2] Plaintiff met the insured status requirements of the Social Security Act ("SSA" or "Act") through December 31, 2017. Tr. 15. Plaintiff has at least a high school education and is able to perform past relevant work as a customer order clerk. Tr. 22, 23. Plaintiff claims she is disabled based on conditions including degenerative disc disease of the cervical spine, arthritis of the spine, and fibromyalgia. Tr. 15, 18, 171, 181.

Plaintiff's benefits application was denied initially on November 26, 2014, and upon reconsideration on February 25, 2015. Tr. 13. A hearing was held before Administrative Law Judge Paul G. Robeck on November 10, 2016. Tr. 30–75. ALJ Robeck issued a written decision on February 22, 2017, finding that Plaintiff was not disabled or entitled to benefits. Tr. 24. The Appeals Council declined review, rendering ALJ Robeck's decision the Commissioner's final decision. Tr. 1–6.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v.*

---

[2] Citations to "Tr." refer to the administrative trial record filed here as ECF No. 13.

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

**THE ALJ'S DECISION**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2013, the alleged disability onset date. Tr. 15.

At step two, the ALJ determined that Plaintiff had "the following severe impairments: degenerative disc disease of the cervical spine status post fusion and nerve stimulator and fibromyalgia." Tr. 15. The ALJ determined that Plaintiff's status post nondisplaced basilar thumb fracture and depression were not severe. Tr. 15–16.

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 17. In particular, the ALJ found that Plaintiff's "degenerative disc disease d[id] not meet or medically equal the criteria of Listing 1.04 (Disorders of the spine) or any listing in the Listing of Impairments." Tr. 17.

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work

> except postural activities are limited to occasionally. Overhead reaching bilaterally is limited to occasionally. Handling, which includes[] holding, grasping, and seizing, is unlimited on the left and limited to frequent on the right. She is limited to occasional use of hand controls, such as clutches and robotic arms, bilaterally.

Tr. 18.

At step four, the ALJ determined that Plaintiff was able to perform past relevant work as a customer order clerk. Tr. 22.

At step five, the ALJ relied on the testimony of a vocational expert to find, in the alternative, that additional jobs existed in significant numbers in the national economy that Plaintiff could perform. Tr. 22–23. Accordingly, the ALJ concluded that Plaintiff was not disabled. Tr. 23.

# STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted)).

# DISCUSSION

Plaintiff challenges the ALJ's decision to discount her subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons" (quotation marks and citation

5 - OPINION & ORDER

omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." (quotation marks and citations omitted)).

When evaluating subjective symptom testimony, an ALJ may properly consider several factors, including a plaintiff's "daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). An ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms" and did not identify evidence of malingering. Tr. 19. However, the ALJ found that Plaintiff's allegations were "not fully consistent with the evidence on record." Tr. 21. Specifically, "[t]he efficacy of the claimant's treatment regimen and her activities of daily living [we]re inconsistent with the degree of impairment described." Tr. 21.

An ALJ may consider whether treatment effectively controls a plaintiff's condition. *Orteza*, 50 F.3d at 750; *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling." (citations omitted)). Here, the ALJ found Plaintiff's treatment effective, noting that "the spinal

cord stimulator and medication . . . provided excellent symptom relief without side effects." Tr. 21.

Plaintiff acknowledges that she "regularly reported that her medications were somewhat effective, and that she got some relief from her spinal cord simulator." Pl.'s Br. 6. Plaintiff argues, however, that the record, read as a whole, does not support the ALJ's position that Plaintiff's treatment was effective. *Id.* The Court does not agree. Not only does Plaintiff fail to cite a single medical record, but the Court finds that the record as a whole does, in fact, support the ALJ's conclusion. For example, despite needing occasional recalibrations, Plaintiff frequently reported that her spinal cord stimulator reduced her pain. Tr. 261, 315, 384, 390, 393, 523. In August 2014, she stated "her reprogrammed stimulator help[ed] very well." Tr. 369. In June 2016, Plaintiff reported she found the spinal cord stimulator helpful. Tr. 641. Plaintiff also reported that medication managed her pain, and that she experienced as much as an "85% benefit" at times. Tr. 387; *see also* Tr. 262, 363. In August 2014, Plaintiff rated her average pain score as a 3/10, with flares at 7/10, and a "70% benefit" from her medication. Tr. 369. In October 2015, Plaintiff reported that her pain averaged a 5/10 and was "[a]ctively improved." Tr. 609. While it is unclear to the Court whether Plaintiff's self-reported pain scores (e.g. "3/10" and "5/10") were intended to quantify her pain while on or off medication, "where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591.[3] In short, the ALJ's conclusion that the efficacy of Plaintiff's treatment was inconsistent with the degree of impairment she described is supported by

---

[3] Plaintiff also argues the ALJ misunderstood the nature of fibromyalgia, which often presents with good and bad days. Pl.'s Br. 6. However, Plaintiff again fails to cite the record to support her position that Plaintiff, in fact, experienced both good and bad days.

7 - OPINION & ORDER

substantial evidence in the record. The ALJ did not therefore err in discounting Plaintiff's subjective symptom testimony for this reason.

Besides effective treatment, the ALJ also relied on Plaintiff's activities of daily living as a basis for discounting her subjective symptom testimony. An ALJ may discount a Plaintiff's testimony when it is inconsistent with her daily activities. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ wrote that Plaintiff's activities of daily living were "inconsistent with the degree of impairment" she described. Tr. 21. For example, the ALJ noted that Plaintiff was "able to perform personal care, care for a pet dog, go on dates with her boyfriend, prepare meals, do household chores, babysit her grandchildren twice a week, drive a car, shop in stores, manage finances, go fishing, ride in her boat, work in her garden, and socialize in person and by telephone." Tr. 21. The ALJ did not, however, explain how these activities are inconsistent with Plaintiff's allegations (which included the "need[] to lie down for two to three hours a day," Tr. 21). The ALJ also failed to include many of the relevant qualifiers that Plaintiff attached to these statements. For example, Plaintiff testified that she can only work in her flower beds "if [her] neck will allow" and can accomplish 30 minutes of household chores but must then "rest [her] neck for 20 minutes or just stop for the day." Tr. 184, 185. The Ninth Circuit has cautioned ALJs on this topic, explaining that claimants need not be "utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen*, 80 F.3d at 1287 n.7; *Molina*, 674 F.3d at 1112–13 ("[A] claimant need not vegetate in a dark room in order to be eligible for benefits . . . .").

Regardless, the ALJ's reliance on effective treatment is sufficient to uphold the ALJ's overall symptom evaluation. *See Batson*, 359 F.3d at 1197 (holding that error by an ALJ as to

one basis for adverse credibility determination is not fatal to the overall determination if the ALJ gave other reasons which are supported by substantial evidence in the record). Thus, to the extent the ALJ erred in relying on Plaintiff's activities of daily living, this error was harmless.

## CONCLUSION

The decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

Dated this 31 day of August, 2019.

                                                                    _____
                                                                    MARCO A. HERNÁNDEZ
                                                                    United States District Judge